## ELLIOTT *v.* UNITED STATES.

HABEAS CORPUS; CONTEMPT OF COURT; JURISDICTION; ATTORNEY AND
        CLIENT; PRIVILEGED COMMUNICATIONS.

1. When in this District an application is made for the writ of habeas corpus either to the supreme court of the District or to a justice thereof, and the writ is issued, the return is required by D. C. Code, § 1143, to be made, not to the court simply, but before the court or justice by whose order the writ was issued, and therefore where the writ, issued on the petition of a party who had been committed to custody by one of the justices of that court, and presented to the chief justice thereof, is made returnable before the justice who committed him, and a return is made by the officer having him in custody, the writ and the return will be quashed; Mr. Justice SHEPARD *dissenting.*

2. A commitment of a party to jail by a court without jurisdiction or .want of legal authority therefor, as in case of a commitment for contempt of court where it is shown there was no ground for the contempt charged, is void, and the party committed on proceedings by habeas corpus instituted by him is entitled to a discharge from custody.

3. An attorney who while under cross-examination as a witness declines to disclose the name of a party for whom he had testified on direct examination he had prepared memoranda for a will, for the reason that he had promised his client not to divulge his name, is not guilty of contempt of court in so doing, as the question requires him to divulge a privileged communication, and, if committed to jail by the trial court for contempt, will be discharged in proceedings by habeas corpus instituted by him; Mr. Justice SHEPARD *dissenting.*

No. 1403.    Submitted March 2, 1904.    Decided May 3, 1904.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia overruling a de-

murrer to a return to a writ of habeas corpus, dismissing the petition for the writ, and remanding the petitioner to custody.

*Reversed.*

The COURT in the opinion stated the case as follows:

This appeal is from an order of Mr. Justice Wright passed while holding a special term of the supreme court of the District of Columbia as a probate court, overruling a demurrer to the return to a writ of habeas corpus made returnable before him, and dismissing the petition for said writ, and remanding the appellant to prison.

The facts of the case are fully set forth in the petition for the writ of habeas corpus, and the return thereto by the warden of the jail, and the warrant of commitment, a copy of which is annexed to and made part of the return.

The appellant is an attorney at law and a member of the bar of the supreme court of the District of Columbia since the year 1870. And being confined in prison, he addressed his petition for habeas corpus to the supreme court of the District of Columbia praying to be discharged.

By his petition for the writ, he alleges that on the 10th day of February, 1904, he was summoned and attended as a witness to testify in the trial of a contested will case pending in said court, being held as a probate court, by the honorable Dan Thew Wright, one of the justices of the said supreme court; that the appellant was examined as a witness for the caveatees in the case, and he was asked to state what, if anything, W. W. Galt, the testator, had said to him, the witness, about a will, and to give the details of what had been said to him; to which he replied, "I remember one day going in there and he said to me, "Harry, where have you been?" I said, "Well, I have just been up to make some memoranda to prepare a gentleman's will." He said, "That reminds me—I want mine fixed." And, on cross-examination, the appellant was asked: "Mr. Elliott, what was the name of the person for whom you prepared the memoranda for a will, which you referred to in the conversation with

Mr. Galt, as to which you testified yesterday?" The appellant declined to answer said question without the permission of the party for whom he had prepared said memoranda. Thereupon the court held that the question put to the witness did not require or call upon him to divulge a privileged communication, and required the witness to answer said question; but the court gave the witness opportunity to communicate with the person for whom witness had made said memoranda, and deferred further action until the following day.

It is further alleged that, on the following day, to wit, the 12th day of February, 1904, the petitioner appeared in said court and stated that he had endeavored to communicate with his client for whom he had prepared said memoranda, but had been unable to hear from said client; and said petitioner, thereupon, in response to the direction of the court, declined to answer the aforesaid question, on the ground that said question was irrelevant and immaterial, and that he, the said petitioner, was privileged, by reason of the relation of attorney and client existing between him and said person, from answering said question, and that it was his duty as such attorney, not to answer said question; and on the further ground that he, at the request of the person for whom said memorandum was prepared, promised not to divulge the name and identity of said person, or the fact that he had prepared memoranda for a will, as he, the testator, had good reason of his own for not letting anyone know he had made a will; whereupon said petitioner gave his solemn pledge not to divulge anything about said business, without said testator's permission to do so.

Thereupon said justice holding said court, by his order, adjudged the petitioner to be in contempt of said court, for his refusal to answer said question as aforesaid, and forthwith committed said petitioner to jail, there to be held by the warden thereof until said petitioner should signify his readiness to make answer before said court and jury to the question as aforesaid propounded. That pursuant to said commitment said petitioner was taken into custody and delivered to said warden of the jail, where and by whom he is now held as a prisoner. It is further

alleged, that said justice, in committing said petitioner for the supposed contempt, stated in open court that the reason for his action in so committing the petitioner was that he, the said justice, did not believe said petitioner ever had a client for whom he made said memoranda for a will. With the petition is filed a copy of the order and commitment under which the petitioner is held in prison.

The petitioner alleges that he was of right entitled by privilege from making answer to the question propounded to him on cross-examination, and that the order and commitment for refusal to answer said question was and is without authority of law, and therefore null and void.

Wherefore he pays a writ of habeas corpus to be directed to the warden of said jail, commanding him to produce in court the body of the said petitioner, with the cause, if any, of the detention of said petitioner, and, if no sufficient cause be shown, that said petitioner may be discharged from imprisonment.

Upon this application, addressed to the supreme court of the District of Columbia, the chief justice of said court, by order of the 13th day of February, 1904, directed the writ of habeas corpus to be issued, and to be made returnable before Mr. Justice Wright, the justice before whom the trial was had, and who had adjudged the petitioner to be guilty of contempt of court, for refusal to answer the question, and who had, by his order, committed the prisoner to prison, there to be detained until the latter should be willing to answer said question propounded on cross-examination as before stated.

The writ having issued as directed, the warden made return thereof, and in his return he states the fact that he held the petitioner under and by virtue of a warrant of commitment issued by said court, and which is made a part of the return to the writ. In this commitment, the material facts are recited substantially as they are set forth in the petition for the writ.

To the return thus made, the petitioner demurred, upon the ground that the return did not show a legal and sufficient cause for the commitment and detention of the petitioner. The de-

murrer was overruled by Mr. Justice Wright, the writ discharged or quashed, the petition dismissed, and the petitioner was thereupon remanded to prison. It is from this order refusing to discharge and remanding the petitioner to jail, that this appeal has been taken by the petitioner.

*Mr. Nathaniel Wilson* and *Mr. Clarence R. Wilson,* for the appellant:

1. The court below was without jurisdiction or power to consider the petition, the return, and the demurrer. Its order overruling the demurrer discharging the writ, dismissing the petition, and remanding the petitioner was therefore void. D. C. Code, § 1143.

2. The commitment set forth in the return is fatally defective in that it does not show an adjudication that the petitioner was guilty of a contempt. *Ex parte Adams,* 25 Miss. 883; *Ex parte O'Brien,* 127 Mo. 477; *People* v. *Baker,* 89 N. Y. 460; *Andrews* v. *Knox Co.* 70 Ill. 65; Rapalje, Contempt, ¶ 128; *Sherwood* v. *Sherwood,* 32 Conn. 1; *Privett* v. *Pressley,* 62 Ind. 491; *People* v. *Bennett,* 4 Paige, 282; *Mahon* v. *Mahon,* 5 N. Y. Civ. Proc. Rep. 58; *Ex parte Woodworth,* 29 Ohio L. J. 315.

3. The commitment set forth in the return is fatally defective in that, while purporting to set forth the facts constituting the alleged contempt, it does not set forth those facts with sufficient fullness and accuracy. It may be true, although there is authority to the contrary, that a court in committing a prisoner for contempt is not bound to set forth in the commitment the facts constituting the alleged contempt; but by the great weight of modern authority, when the court does undertake to set forth those facts, it must set them forth fully so as to show in what the contempt consisted. The commitment in the present case fails to do this. See: *Re Marsh,* MacArth. & M. 32; *Rawson* v. *Rawson,* 35 Ill. App. 505; *De Witt* v. *Dennis,* 30 How. Pr. 131.

· 4. This court has power on this appeal to examine the commitment and to determine whether the acts therein set forth as cause of imprisonment do, as matter of law, constitute a cause

of imprisonment. *Ex parte Kearney,* 7 Wheat. 38; *Ex parte Fisk,* 113 U. S. 713; *Ex parte Tyler,* 149 U. S. 164; *Re Terry,* 128 U. S. 289; *Re Swann,* 150 U. S. 637; *Re Burrus,* 136 U. S. 586; *United States* v. *Pridgeon,* 153 U. S. 48; *Re Ayers,* 123 U. S. 443; *Ex parte Hickey,* 4 Smedes & M. 751, 768; *People* v. *Kelly,* 24 N. Y. 75; *Gwillim* v. *McJunkin,* 2 S. C. N. S. 442; *Holman* v. *Austin,* 34 Tex. 668; *Ex parte Senior,* 37 Fla. 1; *Re Shortridge,* 34 Pac. 227; *Ex parte Rowe,* 7 Cal. 181; *Ex parte Summers,* 5 Ired. 149.

5. Elliott's refusal to answer the question propounded to him, as shown by the commitment, does not constitute a contempt, and is not punishable as such. Greenl. Ev. 15th ed. ¶ 237; *Chirac* v. *Reinicker,* 11 Wheat. 280; Opinion of Chief Justice Marshall in *Burr's Trial,* p. 245; *Ward* v. *State,* 2 Mo. 120; *Pool* v. *Perritt,* 1 Speers, 128; *Floid* v. *State,* 7 Tex. 215; *Chamberlin* v. *Wilson,* 12 Vt. 491; *People* v. *Rector,* 19 Wend. 569; *Lister* v. *Baker,* 6 Blackf. 439; *Ex parte Senior,* 37 Fla. 1; *Holman* v. *Austin,* 34 Tex. 668; Greenl. Ev. §§ 237, 238.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, *Mr. Peyton Gordon,* and *Mr. Jesse C. Adkins,* Attorneys for the United States:

1. The appellant voluntarily appeared before Mr. Justice Wright and did not then object that the latter was without jurisdiction to hear the writ. This court will not listen to the objection made here for the first time. Section 3 of Rule V. of this court. *District of Columbia* v. *Roth,* 18 App. D. C. 551; *Gaslight Co.* v. *Lansden,* 9 App. D. C. 508, 540; *Norman* v. *United States,* 20 App. D. C. 497.

2. Even if the preceding contention can be considered, it is without merit. The return must be made to the court, judge, or officer designated in the writ, and this ordinarily is the one by whom the writ was granted, though convenience or necessity often requires that the return should be made to another, and provision is usually made therefor by statute. 15 Am. & Eng. Enc. Law, 2d ed. p. 196; 9 Enc. Pl. & Pr. p. 1027. In *Re Kaine,* Fed. Cas. No. 7,598, 14 Fed. Cas. pp. 86, 87, it is held

that a district judge allowing the writ of habeas corpus at chambers in term time of the circuit court may at his discretion make it returnable before the circuit court. See also *Ex parte Angus,.* 28 Tex. App. 293; D. C. Code §§ 67, 68, 1147.

3. While the appellant, in refusing to obey the order of the court directing him to answer the question, did commit a contempt of the court, and may be punished therefor; this commitment is not made for that purpose; it is not made to punish the appellant for his contemptuous defiance of the court, but it is made for the sole purpose of compelling obedience to the order of the court. *People* v. *Fancher,* 4 N. Y. Sup. Ct. Rep. 467; *Ward* v. *State,* 2 Mo. 120; *Lott* v. *Burrel,* 2 Mill Const. 167; *Ex parte Rowe,* 7 Cal. 176; *Re Hall,* 10 Mich. 210; *Ex parte Tinsley,* 40 S. W. 306, S. C. 171 U. S. 171; *Tome's Appeal,* 50 Pa. 285, 297; *Com.* v. *Reed,* 59 Pa. 425. Under these authorities and the reason of the law, a court has authority to compel a witness to answer a question which the court has adjudged to be proper, and therefore the commitment here is sufficient.

4. The assignment of error that this court on this appeal has power to examine the commitment and determine whether or not what the witness has done is a contempt overlooks the fact that the commitment is simply in execution of the judgment of the court, and not a punishment for the contempt. The real question, then, is whether this court can examine the commitment and determine whether the court had the power to make that commitment. We submit that this court is without authority to make such an examination, for that would involve a collateral review upon the judgment of the court. The writ cannot be used to perform the office of a writ of error or appeal. *Ex parte Terry,* 128 U. S. 289; *Re Swan,* 150 U. S. 648; *Tinsley* v. *Anderson,* 171 U. S. 101; *Tindall* v. *Wescott* (Ga.) 55 L. R. A. 225; *Latney* v. *United States,* 18 App. D. C. 265; *United States* v. *Davis,* 18 App. D. C. 280.

5. An examination of the commitment fails to show that the court erred in committing appellant until he should answer the question, or that the commitment is void. From the pleadings in this case any consideration of the propriety of the question

asked the witness must be confined exclusively to what appears in the commitment, for the reason that the return denies all the allegations of the petition except that the appellant was committed during the trial of the cause named in the petition, and the demurrer admitted the truth of such denial. From this commitment it appears that during the trial of the cause described in it the appellant was sworn as a witness for defendant, and gave evidence tending to prove the issues in her favor, and that on cross-examination a certain question was asked the witness; that the defendant objected and the witness claimed a privilege, but the court overruled the objection and claim of privilege, and directed the witness to answer the question, which he refused to do. There is nothing in the commitment, however, to show the nature of the objection made by defendant or of the claim of privilege advanced by the witness, so that this court cannot say whether either was well founded.

6. Even if the contention of appellant, that the question asked him sought to compel him to disclose a privileged communication, were properly before this court, we submit that the following authorities conclusively establish the proposition that an attorney may be compelled to give the name of his client: *Shaughnessey* v. *Fogg,* 15 La. Ann. 330; *Brown* v. *Payson,* 6 N. H. 443; *Com.* v. *Bacon,* 135 Mass. 521; *Martin* v. *Anderson,* 21 Ga. 301; *Mobile & M. R. Co.* v. *Yates,* 67 Ala. 164; *Satterlee* v. *Bliss,* 36 Cal. 489; *White* v. *State,* 86 Ala. 69; *Chirac* v. *Reinecker,* 11 Wheat. 280; *Gower* v. *Emery,* 18 Me. 79, 82.

7. The commitment in this case is not bad because for an indefinite period. *Williamson's Case,* 26 Pa. 1, 23.

*Mr. A. S. Worthington* appeared as *amicus curiæ.*

Mr. Chief Justice ALVEY delivered the opinion of the Court:

It is first objected, on the part of the appellant, that there was error in the issuance of the writ in making it returnable before Justice Wright instead of the supreme court of the District to which the application for the writ was made. This objection is

based upon the terms of the Code of the District, chapter 32, title "Habeas Corpus." By § 1143 of the Code, it is provided that any person, being imprisoned, "may apply by petition to the supreme court of the District, or any justice thereof, for a writ of habeas corpus, to the end that the cause of such commitment, detainer, confinement, or restraint may be inquired into; and the court, or the justice applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant such writ, directed to the officer or other person in whose custody or keeping the party so detained shall be, returnable forthwith before said court or justice." And by § 1148 it is provided that, upon the return of the writ and the production of the person, "the court or justice shall immediately inquire into the legality and propriety of such confinement or detention, and if it shall appear that such person is detained without legal warrant or authority, he shall immediately be released or discharged; or if the court or justice shall deem his detention to be lawful and proper, he shall be remanded to the same custody," etc.

It is quite obvious, we think, that the term "justice" is not intended to be synonymous with "court," nor "court" with the term "justice," as used in these sections of the Code. While clothed with the same power, the court and the justice are authorized to act separately and distinct from each other, in matter of habeas corpus, as under the English habeas corpus act of 31 Car. II. chap. 2. Hence, when an application is made for the writ of habeas corpus, either to the court, or to a justice thereof, the return is required, by the terms of the statute, to be made, not to the court simply, but before said court or justice by whose order the writ was issued. It was certainly never intended that a prisoner applying to the court composed of several judges, any one of whom, *not disqualified,* being competent to act as and for the court, should be compellable to have the question of the legality of his imprisonment decided and disposed of by one of the justices of the court, by whose predetermination and decision the party had been, upon full consideration, committed to and detained in prison. It is manifest, if the applica-

tion for the writ had been laid before Mr. Justice Wright he would not have granted the writ, and if that, apparently, would have been the disposition of the application by him, the writ, granted by another judge ought not to have been made returnable before the justice who had predetermined the case. The terms of the statute should be given a reasonable interpretation, in order to effectuate the object in view, and not to defeat that object. When the statute requires that, immediately upon the return to the writ and the production of the party detained, the court or justice should proceed to *inquire into the legality and propriety of such confinement or detention,* and if it should appear that such detention was without legal warrant or authority should at once discharge the party, such requirement could hardly have been intended to be addressed to the judge or justice who had heard and predetermined upon the sufficiency of the cause for the committal and detention of the party, and whose judicial act constituted the cause of grievance of which the party complains. Such a proceeding would seem to be nothing more in effect than a simple travesty of justice; and we are convinced that such a proceeding was never contemplated by the provisions of the Code.

But this error in the issuance and return to the writ does not reach the vital and important question intended to be presented by this appeal. At most it would require the quashing of the writ and return, but that would leave the question of the legality of the imprisonment of the appellant undetermined.

The question, however, of the legality of the commitment and detention of the appellant, as for contempt of court, or because of his failure to answer the question propounded to him and required by the court to be answered, is presented by the appeal; and the appellant contends that, upon the facts as disclosed in the case, there was no sufficient warrant or authority for the commitment to and detention of the appellant in prison; that there was no contempt of court committed by him, and that he was in law fully justified in declining to answer the question which he was by the court required to answer; and therefore the order and commitment by the court, whereby the appellant was

confined in jail, was null and void, for want of jurisdiction in
the premises; and the appellant is entitled to be discharged from
such unlawful imprisonment. These questions are raised by
the demurrer to the return to the writ.

It is a settled principle that the writ of habeas corpus cannot
be made to serve the purpose of a writ of error or of an appeal;
and that under such writ mere errors or irregularities in the pro-
ceedings under which the applicant for the writ was imprisoned
will furnish no ground for review and reversal of such proceed-
ings. But where the commitment was made without jurisdic-
tion of the court, or want of legal authority therefor, as in the
case of a commitment for contempt of court where it is shown
that there was no ground for the contempt charged, there, and in
like cases, the court will, by writ of habeas corpus, discharge
the prisoner. This is an established principle by a series of
cases, in both English and American courts; and it finds clear
and definite expression in several recent decisions of the Su-
preme Court of the United States. As for instance, in the case
of *Ex parte Fisk,* 113 U. S. 713, 28 L. ed. 1117, 5 Sup. Ct. Rep.
724, in an opinion delivered by Mr. Justice Miller, after stat-
ing the general principle that the exercise of the power of pun-
ishment for contempts of their orders, by courts of general ju-
risdiction, is not subject to review by writ of error or appeal, or
by writ of habeas corpus, that learned justice was careful to
qualify this general principle by proceeding to declare that —

"When, however, a court of the United States undertakes, by
its process of contempt, to punish a man for refusing to comply
with an order which that court had no authority to make, the or-
der itself, being without jurisdiction, is void, and the order
punishing for the contempt is equally void. It is well settled
now, * * * that when the proceeding for contempt in such
a case results in imprisonment, this court will, by its writ of
habeas corpus, discharge the prisoner."

The same principle has been laid down in subsequent cases, as
the settled law. *Re Ayers,* 123 U. S. 443, 485, 31 L. ed. 216,
223, 8 Sup. Ct. Rep. 164.

In the case of *Holman* v. *Austin,* 34 Tex. 668, the question

involved was in effect the same as in the present case. In that case, the question was whether the question asked the witness and which he refused to answer, was proper to be asked. For refusal to answer the question the witness was adjudged to be in contempt, and he was committed to prison. The court on habeas corpus determined, as matter of law, that the question was an improper one to be asked, and that the witness did not commit a contempt in refusing to answer it, and was therefore entitled to be discharged. In deciding the question the court said:

"If the question be 'improper;' if the court interrogate a witness about a matter over which it has no jurisdiction and about which it has no right to inquire, the refusal of the witness to answer the interrogatory is no contempt of court, and any order or decision which punishes the refusal to answer as a contempt, is void. * * * To require a witness to submit to answer an illegal and improper question must be regarded as the personal command of the judge, rather than the judicial order of the court."

The cases all agree that an act of a witness in refusing to answer a question propounded to him, if it be his right to decline to answer, will not become a criminal contempt by being adjudged so. *People ex rel. Hackley* v. *Kelly,* 24 N. Y. 75.

The question then is whether the fact sought to be elicited from the appellant by the question propounded to him on cross-examination, and which he refused to answer, was of such privileged character as justified the witness in refusing to answer the same.

The appellant is an attorney at law, and a member of the bar of the supreme court of the District of Columbia. In taking the memoranda for the preparation of the will of the party whose name he refused to disclose, he was certainly acting in his character of attorney, and the relation of client and attorney existed, if his statement be truthful. Was he bound to disclose the name of his client, under the circumstances related by him? The law upon this subject is well settled, and admits of no question or doubt.

Professional communications, made by client to an attorney, or communications passing between client and attorney, are, upon principles of public policy, and from the necessity of preserving confidence in all matters of business where the assistance or agency of an attorney is required, held to be privileged from disclosure; and this privilege is that of the client rather than that of the attorney. This privilege embraces all communications made by the client to his attorney for and in course of the business for which the attorney may be employed. The latter cannot be permitted to disclose such communications, whether they be in the form of title deeds, wills, documents, or other papers delivered or statements made to him, or of letters, entries, or statements, written or made by him in that capacity. *Herring* v. *Clobery,* 1 Phill. Ch. 91, 96, 11 L. J. Ch. N. S. 149; *Cromack* v. *Heathcote,* 2 Brod. & B. 4, 4 J. B. Moore, 357, 22 Revised Rep. 638; *Greenough* v. *Gaskell,* 1 Myl. & K. 101, Coop. *t.* Brougham, 96. The protection is not qualified by any reference to proceedings pending or in contemplation, nor is it material that the client be in no manner before the court where disclosure is sought to be had.

"If, touching matters that come within the ordinary scope of professional employment, they [legal advisers] receive a communication in their professional capacity, either from a client, or on his account and for his benefit in the transaction of his business, or, which amounts to the same thing, if they commit to paper, in the course of their employment on his behalf, matters which they know only through their professional relation to the client, they are not only justified in withholding such matters, but bound to withhold them, and will not be compelled to disclose the information or produce the papers in any court of law or equity, either as party or as witness." 1 Greenl. Ev. 12th ed. §§ 236–244; 1 Taylor, Ev. 6th ed. pp. 812–816; and the cases cited by the authors.

It is true, the strict enforcement of the rule may, in some cases, operate to the exclusion of truth; but that does not justify the breaking down of a great principle of protection founded in wisdom and public policy, and necessary to be observed in the

administration of an enlightened system of jurisprudence. Like all other general principles, it may, in some instances, fail to accomplish the ends for which it was established. The privilege of the witness or his client, however, does not preclude the adverse party from resorting to any and all legitimate methods. of proof to reach the facts desired to have disclosed.

In this case, it was competent to show by independent evidence that the witness, claiming and insisting upon his privilege,. had in fact no such client as he pretended to have, and thus, by such proof, to impeach the credibility of the witness. But not by compelling the witness against his claim of privilege to make the disclosure. For by making the disclosure of the name of his client he would certainly have committed a breach of professional confidence, and violated a privilege of his client, supposing him to have one, as he had stated in his testimony.

It has been held, in some cases, that an attorney may be required to disclose the name of the person by whom he was retained, in order to let in the confessions or admissions of the real party in interest;—the character in which his client employed him, whether that of an executor or trustee, or on his private account. But this is not a principle of universal application, and manifestly it has no application to this case. A question somewhat of this nature arose in the case of *Chirac* v. *Reinicker,* 11 Wheat. 280, 285, 6 L. ed. 474, 475. It was there held that counsel could not disclose whether they were employed to conduct an ejectment suit for their client *as landlord of the premises.* The real dispute in that case was, whether the question put to counsel did involve the disclosure of professional confidence. If the question had stopped at the inquiry, says the court, "whether the witnesses [the counsel] were employed by Reinicker as counsel, to conduct the ejectment suit, it would deserve consideration, whether it could be universally affirmed, that it involved any breach of professional confidence. The fact is preliminary in its own nature, and establishes only the existence of the relation of client and counsel, and, therefore, might not necessarily involve the disclosure of any communication arising from that relation after it was created. But the question

goes farther. It asks, not only whether the witnesses were employed, but whether they were employed by Reinicker to conduct the ejectment for him, as landlord of the premises. We are all of opinion that the question in this form does involve a disclosure of confidential communications. It seeks a disclosure of the title and claim set up by Reinicker to his counsel, for the purpose of conducting the defense of the suit. It cannot be pretended that counsel could be asked what were the communications made by Reinicker as to the nature, extent, or grounds of his title; and yet, in effect, the question, in the form in which it is put, necessarily involves such a disclosure."

In this case, the question put to the witness and which he refused to answer, by declining to give the name of the party from whom he took the memoranda for preparing the will, involved a breach of professional confidence, which the witness had expressly pledged himself not to violate, according to his testimony. The fact, however, of his being employed to take the memoranda for preparing the will was fully within the privilege of confidential communications as between client and attorney. Few people who find it necessary to employ an attorney to prepare a will desire the fact to be publicly known. It is essentially a confidential and privileged communication; and few attorneys would be employed to draft wills if it were understood that they were at liberty to disclose the fact to any person, or upon any occasion, when disclosure might be desired. In this case, the name of the person from whom the memoranda were taken was, at most, but a collateral fact; but the disclosure being protected by the privilege of the client, the attorney was not, upon any principle, compellable to disclose the name.· 1 Greenl. Ev. § 448. By the terms of the commitment, the appellant could not relieve himself from imprisonment except by violating the privilege of his client; and this he could not be compelled to do.

Upon the case as presented, we are of opinion that the appellant was without lawful or sufficient cause committed to prison, and that his detention is wrongful and without warrant of law; and, consequently, he is entitled to be discharged. It follows,

therefore, that the order from which the appeal is taken must be reversed, and the appellant be discharged; and it is so ordered.

*Order reversed and the appellant discharged from further detention.*

Mr. Justice SHEPARD dissenting:

I am unable to concur in the discharge of the petitioner, for reasons which I will state briefly.

1. I think the better practice in a case like this would be for the justice issuing the writ to make it returnable before himself, but I cannot agree that he has no power to make it returnable before another. The sections of the Code relating thereto must be considered in connection with § 62, which provides, among other things, that "any cause may be certified by any justice to another justice to be heard or tried by the latter."

In my opinion, granting the writ and making it returnable before another is a substantial certification of the case for trial by the latter.

Be that as it may, however, the petitioner has lost the right to raise the question on this appeal. The justice was vested with general jurisdiction of the subject-matter, at least, and the petitioner, by appearing and submitting himself to the jurisdiction without objection, waived any privilege he might have had to a hearing elsewhere.

2. The petitioner is not entitled to have his case determined upon the facts alleged in his petition save where admitted by the return made to the writ. The return denied all of the facts alleged in the petition which were not specially admitted. Instead of joining issue and introducing evidence, he stood upon his demurrer to the return and thereby admitted its entire truth.

3. But considering the case in the light of his own statement, I am convinced that he ought to have been compelled to answer the question.

He was called as a witness by the caveator, and voluntarily mentioned the circumstances which led to the question which he refused to answer. A foundation was thus laid, whether inten-

tionally or not, for [attacking] the credibility of his statement of the resultant declarations of the testator whose will was being contested. Without some such foundation the probability of the fact of the declaration would not seem so great, to say the least. If then the opposing party could show that the first statement was false, the credibility of the second might be seriously affected. The witness himself made the question not only relevant but practically important.

The due administration of justice depends upon the maintenance of the fundamental rule that it is right of every litigant to have introduced, whether witnesses be willing or unwilling, every material and relevant fact that may tend to shed light upon the issue joined.

An exception to the rule, as well established as the rule itself, is that an attorney may not, without the consent of the interested client, be permitted to disclose facts that have been communicated to him by virtue of the relation of attorney and client. But it is an exception, and one who claims the privilege must bring himself entirely within its scope.

The mere fact that an attorney has prepared a will for a person, or has taken memoranda for the purpose, does not, in my judgment, come within the exception; provided always that the inquiry is limited to the simple fact and involves no inquiry into the terms of the will or into communications made relating thereto in the slightest particular. The mere fact that a will has been made is clearly distinguishable from professional communications relating thereto.

Grant that the average testator might seriously object to the fact of his execution of a will being made public, and further that it would be unprofessional for his attorney to voluntarily make the fact known; yet these conditions fail to justify the refusal of the attorney to answer to the fact when called as a witness in a case wherein it is relevant to the issue and more or less important to the interests of one of the litigants.

The will must, by provision of law, be executed in the presence of witnesses. These are clearly not privileged, and the testator himself could be made to disclose the fact. At the same time the

testator could not be compelled to disclose communications by and to his attorney in the matter.

That an attorney may be compelled to disclose the name of his client in a particular case or matter is well settled. *Chirac* v. *Reinicker,* 11 Wheat. 280, 294, 6 L. ed. 474, 477; *Brown* v. *Payson,* 6 N. H. 443; *Shaughnessy* v. *Fogg,* 15 La. Ann. 330; *Com.* v. *Bacon,* 135 Mass. 521, 525; *Martin* v. *Anderson,* 21 Ga. 301, 308; *Mobile & M. R. Co.* v. *Yeates,* 67 Ala. 164, 167; *White* v. *State,* 86 Ala. 69, 75, 5 So. 674; *Gower* v. *Emery,* 18 Me. 79, 82; *Rundle* v. *Foster,* 3 Tenn. Ch. 658.

In *Com.* v. *Bacon,* 135 Mass. 521, 525, the witness was required to answer if he had brought an action in the name of "H. J. Brown"—a fictitious plaintiff, and also whether the interrogatories therein, purporting to be signed by "Brown," had been signed and sworn to by the defendant. The court said that this fact involved no professional communication, and "hence, although it so happens that the attorney would not actually have known what he testified to but for his employment, his employment cannot be regarded as the legal ground of his knowledge, and the defendant could not object to the disclosure."

In all of the cases cited the distinction is clearly drawn between a question seeking information as to a strict matter of fact, and as to a matter of confidential communication, relating to that fact.

I have found no case directly in point, but if an attorney can be forced to disclose the person in whose name, or for whose advantage under a fictitious name, he may have brought an action, then, for equally as strong a reason, he ought to be made to disclose the mere fact that he had written a will or had been retained to write one.