## TUTSON v. HOLLAND et al.
### No. 5049.

Court of Appeals of District of Columbia.

Argued March 6, 1931.
Decided May 4, 1931.

Motion for Rehearing Denied May 23, 1931.

Elwood G. Hubert, of Washington, D. C., for appellant.

C. H. Houston, of Washington, D. C., for appellees.

Before MARTIN, Chief. Justice, and ROBB,· HITZ, and GRONER, Associate Justices.

GRONER,· Associate Justice.

This is an appeal from a decree of the Supreme Court of the District dismissing plaintiff's bills of complaint. The original bill sought an accounting from defendant Joseph F. Holland as to his management of certain of plaintiff's real estate situated in the city of Washington. The supplemental bill prayed that a sale of the same property under a deed of trust should be declared fraudulent and set aside. We shall call the parties plaintiff and defendant.

Only three points are urged in this court. The first relates to the admission in evidence, over plaintiff's objection, of certain "confidential information"; the second to the refusal of the special master, to whom the case was referred for an accounting and report, to postpone the hearings; and the third to

the acceptance by the court of the master's report and the dismissal of the bill. A brief statement of the facts will be sufficient for a discussion of these questions.

Plaintiff owned certain real estate in the city of Washington which was heavily incumbered. These incumbrances were about to mature, and plaintiff was without means either of discharging them by payment, or of securing new loans to replace them. She negotiated with defendant Holland with the view to having him refinance the property for her. At defendant's suggestion, and the more readily to accomplish the refinancing, plaintiff executed a deed of the property to defendant. The deed was placed in escrow with plaintiff's attorney, and later, on instructions from plaintiff, delivered to defendant for recordation. Defendant then executed a deed back to plaintiff, and in turn placed it in escrow with plaintiff's attorney. (What subsequently happened to this deed is not shown in the record.) The agreement between the parties was that defendant should collect the rents from the property, pay certain fees, taxes, and expenses, including certain monthly installments on the mortgage, provide for the upkeep and management of the property, and render the plaintiff's attorney monthly accounts of his transactions. Defendant was to receive 5 per cent. of the rents collected, and an "additional sum" for his services in refinancing and managing the property. The parties agreed that the contract should remain in force until the defendant had been paid in full his commissions, interest, and moneys advanced in connection with the property, and he was then to reconvey the property to plaintiff. It was further agreed that in the event plaintiff failed without just cause to fulfill her part of the contract the conveyance was to be considered absolute.

Plaintiff in her bills alleges that defendant refused to make an accounting despite repeated demands on him; that he increased the encumbrances on the property, and failed to account for the surplus; and that, in violation of the contract, he refused to reconvey the property to her, but instead recorded the deed from plaintiff to himself, and executed an additional mortgage covering certain advances for account of the property which he claims he made and which plaintiff denies, and permitted a foreclosure under one of the refinanced mortgages, in which sale he participated through a dummy, and thus acquired the property in total disregard of plaintiff's rights. Neal, the alleged dummy-purchaser, was made an additional party by the supplemental bill. An injunction pendente lite was granted by the lower court. Defendant himself denied all of the material allegations of the bill, and charged that he had rendered full and regular accountings, that the sale of the property was in all respects in order, and that defendant had no part or parcel with Neal in his purchase, and Neal filed an answer setting up that he was a bona fide purchaser for value.

By consent of parties, the cause, which had been referred to a special master on the original bill, was again referred to the master to take testimony "concerning all the matters and things embraced in the pleadings, including the original and supplemental bills and answers" and to report to the court his findings and recommendations. The special master, after full hearings covering an unnecessarily long period of time, filed his report in which he found plaintiff's contentions entirely without merit. To this report, no exceptions were filed, and the same was, some time after the expiration of the time within which exceptions might be filed, in all respects ratified and approved by the court, and this we are asked to set aside and annul.

Obviously, we think, we ought not to substitute our views for those of the master and the lower court as to matters of fact which have been submitted to and passed upon by both. As was said by Mr. Justice Field, speaking for the Supreme Court in Kimberly v. Arms, 129 U. S. 512, 524, 9 S. Ct. 355, 359, 32 L. Ed. 764: "A reference, by consent of parties, of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration—a proceeding which is governed by special rules—is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law. Its findings, like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed, under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise." In this case, we have examined the record, and we are unable to say that there appears to be manifest error in the consideration of the evidence or in the application of the law. See Pensacola Shipbuilding Co. v. Southern Wood Preserving Co. (C. C. A. 4th) 45 F.

(2d) 164, and cases there cited. And we are further strengthened in this view by the failure of the plaintiff to take any exceptions to the master's report. The rule in this respect is that the report of the master to which no exception has been taken, and which does not disclose error on its face, cannot be excepted to, in whole or in part, in an appellate court, Burns v. Rosenstein, 135 U. S. 449, 455, 10 S. Ct. 817, 34 L. Ed. 193, and we find nothing in the record to take the present case out of this general rule.

■ We pass, therefore, to the only other two questions for decision. The first of these, as we have already seen, relates to the admission in evidence, over plaintiff's objection, of the testimony of a certain attorney at law who had represented plaintiff in the negotiations leading to the making of the contract out of which the suit grows. The attorney's name was Smith, and when he was first placed on the stand by the defendant at the hearing before the master, objection was made to several questions which were asked on the ground that the answers would involve disclosure of confidential communications. He was then withdrawn from the stand, and the question of the admissibility of his evidence was argued before the master, and the objection overruled, and he was permitted to testify. We have carefully examined his testimony to ascertain if any of it came within the rule protecting communications between client and attorney. Neither in the assignments of error nor in the brief is the objectionable testimony specified, but, in spite of this, we have examined for ourselves the record to determine if it was to be found. All that appears is that the witness, as counsel for plaintiff, received several communications from defendant which he transmitted to his client. This we think could properly be shown. The statements made by his client which he was asked to repeat were all statements made in the presence of defendant at a conference in which the three participated. In these circumstances, the statements were not privileged, nor were they within the scope of confidential communications which courts protect. The rule of privileged communications arose in order that a party might with safety completely inform his attorney as to the matters in which he is employed to the end that the attorney might act with full understanding of them. The limits of the rule, however, are well defined, and as its tendency is to stifle a full disclosure of the truth, courts have been careful to confine it within its legitimate scope, and so it has been held that the rule does not apply to the discovery of facts within the knowledge of an attorney which were not communicated by a client, though he became acquainted with such facts while engaged as attorney for the client. Crosby v. Berger, 11 Paige (N. Y.) 377, 42 Am. Dec. 117. And in that case it was said that an attorney is bound to produce letters communicated to him from collateral quarters, and to answer as to matters of fact as distinguishable from matters communicated to him by his client in professional confidence. And in York v. U. S. (C. C. A. 8th) 224 F. 88, 91, it was held that the presence of a third party, particularly if he is an opposing party, indicates that the communication is not confidential or privileged. See also Greenleaf on Evidence (16th Ed.) § 246. We must therefore conclude that this point is without merit.

■ This leaves only for consideration the charge that the special master proceeded to a hearing in July, 1928, in spite of the fact that appellant was without counsel or witnesses, and desired a postponement until counsel and witnesses could be obtained. The same charge was raised and examined by the court below and determined against plaintiff, and the affidavit of the special master, which the court below considered, shows that in ample time before the hearing notice was sent to plaintiff's attorney of record of the time and place of hearing. At the hearing, plaintiff appeared in proper person, but without counsel. She made no objection to the hearing proceeding, and participated in it, and herself cross-examined the witnesses, and was afforded an opportunity to present a statement in relation to the account of rents and profits previously furnished her by defendant which she expressed a desire to file but never did, but on the contrary advised the master that she would neither submit the statement nor any other evidence. She had previously testified in her own behalf, at which time she was fully examined by her own counsel, and the master's affidavit shows that at the hearing in question the testimony related principally to the foreclosure of the property and its purchase by Neal, and to the expenses incident to the defense of the suit. We have examined the evidence ourselves to determine whether plaintiff was prejudiced by the refusal of the master to continue the hearing, and we are unable to say that this is the case. It would have been better, we think, in view of the fact that plaintiff was a woman, more or less unfamiliar with court procedure, if the hearing had been post-

poned, but it should not be lost sight of that after the hearing she was afforded the opportunity by the master to introduce any further evidence which she desired to do, and doubtless also might have recalled the witnesses who were examined at the previous hearing for cross-examination. She refused to adopt this course, and she does not even now specify any evidence which she would have offered which could have affected the issue, or any evidence admitted which should not have been, so that even if we should hold that there was an abuse of discretion on the part of the master in refusing to postpone the hearing, we have nothing before us from which to reach a conclusion that any other or different result would be possible if the case should be sent back so as to provide the opportunity which, as we have seen, she had already refused before final decree.

In this aspect of the case, and bearing in mind the principle that the real end to be sought in all litigation is substantial justice, and that to this end even appellate courts should ignore technical rules which may prevent its accomplishment, we are constrained nevertheless to reach the conclusion that plaintiff's bill and supplemental bill are without merit, and that the action of the lower court in dismissing them was right, and should be and is affirmed without costs.

Affirmed.

HITZ, Associate Justice, took no part in the consideration and decision of this case.