**FLACK v. HOLTEGEL.**
No. 6278.

Circuit Court of Appeals, Seventh Circuit.
Dec. 15, 1937.

John W. Becker, of Bradford, Pa., for appellant.

Carlton Fox, of Washington, D. C., James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Julian G. Gibbs, Sp. Assts. to Atty. Gen., and Val Nolan, U. S. Atty., of Indianapolis, Ind., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This appeal presents the sole question of whether the District Court properly held that a conveyance of real estate by Joseph F. Flack, deceased, was made in contemplation of death and that the property thereby conveyed was taxable as a part of his estate. Such was the finding and conclusion of the court, in bar of plaintiff's suit to recover the tax levied and paid.

On October 2, 1925, the decedent and his wife, each then aged eighty-two years, conveyed property of the value of $268,080 to his son and daughter as cotenants, in equal parts, reserving no interest in himself. He died less than six months later on March 30, 1926, possessed of an estate worth $15,000.

The decedent when eighty-one years of age underwent an operation to correct prostate gland and bladder trouble. The result was one of partial success and until the time of his death he was compelled to use a catheter and was attended by a practical nurse. He had first consulted the specialist in genito-urinary diseases who performed the operation on October 2, 1922. He was then past seventy-nine. He had an enlarged prostate gland which prevented complete evacuation of the bladder. The physician treated him daily until October 24, to reduce the fluid in the bladder. At the time of the operation, on March 19, 1924, the doctor opened the bladder and "made a systolic," finding an enlarged prostate but no cancerous condition. In a second opera-

tion, 10 days later, the prostate gland was removed. His general condition was apparently normal. His death followed within two years.

The deceased told the president of a bank, who helped draw the deed, at the time the latter was executed, that he wanted to convey his property to his children and desired that they take care of him and his wife; that they were old enough to exercise control of the property; that the taxes bothered him; and that he desired to relieve himself of the responsibility. To the banker's inquiry, as to whether he desired to retain a lien, his answer was in the negative, but at his request, words were inserted in the deed to indicate that the consideration was the support of himself and his wife.

The son testified that he was interested in real estate in Florida. and discussed it with his father, who replied that he was not interested, but that he would convey the land to the two children, if "you will take care of mother and myself as long as we live"; that thereby the son would acquire credit and be enabled to do business. Subsequent to. the conveyance, the son mortgaged his interest to secure $40,000 which he borrowed, his father joining in the mortgage, and still later he borrowed the further sum of $30,000. He supported his parents, claiming that he used the net income for that purpose, adding some thereto.

The practical nurse attended Mr. Flack after December, 1924, until his death, receiving instructions from the physician. She used a catheter on him about three times a day. Otherwise, she considered him a well man. Neighbors and friends testified that during the last two years of his life he seemed well and never talked of dying.

■ Under the Revenue Act of 1926 transfers of property within two years of one's death are presumed, in the absence of showing to the contrary, to have been made "in contemplation of death" and the property thus conveyed is taxable as a part of the decedent's estate. U.S.C.Supp. V, title 26, § 1094, 44 Stat. 70; 26 U.S.C.A. § 411. Thus the burden was upon plaintiff to overcome the presumption.

■ Such conveyances are taxed because they are testamentary in character. Consequently the pertinent evidence is that which enlightens the court as to the motives of the grantor, usually, quite evidently, confined to the surrounding facts and circumstances. From these the court must determine the intent, the motive of the decedent. It is not necessary that there be a condition "creating a reasonable fear that death. is near at hand," and that "such reasonable fear or apprehension" must be "the only cause of the transfer." U. S. v. Wells, 283 U.S. 102, 51 S.Ct. 446, 450, 75 L.Ed. 867. But it is to be remembered that the dominant purpose is to reach "substitutes for testamentary dispositions" and thus to prevent evasion of the estate tax. Nichols v. Coolidge, 274 U.S. 531, 541, 47 S.Ct. 710, 713, 71 L.Ed. 1184, 52 A.L.R. 1081; Milliken v. U. S., 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809; U. S. v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. The transfer may have all the outward indicia of a completed gift inter vivos; hence the necessity of determining the motive of the transferor. The grantor must contemplate death, for such is the motive which leads to testamentary devices. The question is essentially one of the state of mind of the transferor. As the Supreme Court says in U. S. v. Wells, supra: "It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.' "

■ Here the donor was eighty-one years of age; he had an organic trouble, to repair which only partially he had undergone two operations. The evacuation of waste matter from his bladder could be achieved only by artificial help. He conveyed substantially.all his property to those to whom it would descend by law. These and the other circumstances appearing in evidence, the District Court believed did not overcome the statutory presumption. The district judge saw and heard the wit-

nesses. Under well-known rules, their credibility and the weight of their testimony were peculiarly for his determination, and inasmuch as we have no right to substitute our judgment upon the facts for his and the findings are not inconsistent with the evidence and do not lack support in substantial evidence, the judgment is affirmed.