## BALDWIN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9877.

Circuit Court of Appeals, Ninth Circuit.

Feb. 10, 1942.

Allen Spivock, of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Newton K. Fox, and Benjamin Brodsy, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This appeal involves estate taxes in the amount of $2,034.74, and is taken from the decision of the Board of Tax Appeals entered March 27, 1941 sustaining the determination of the Commissioner to the effect that a certain transfer from the decedent to her son was one intended to take effect in possession or enjoyment at or after death. Section 302(c), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 227.

We are first faced with the question concerning the admissibility of the testimony of one David Cosgrave, who had been the attorney for the decedent during her lifetime. The questions put to the attorney were objected to upon the ground that they called for testimony that was privileged but the objections were overruled. Cosgrave was the only witness for the Government, and testified concerning the motive behind the transfer from the decedent to her son, and also concerning a deed which the son executed back to his mother and deposited with the witness to be delivered to the mother in the event the son predeceased her. The theory of the Government's case is that by the deed from the mother to the son and his deed back, the mother retained a reversionary interest in the properties the same as if she had by a single deed conveyed the property to the son with a reversion to her in the event she survived him. Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; Hel-

HANEY, Circuit Judge, dissenting.

vering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.

A summary of Cosgrave's testimony follows:

The decedent expressed to the witness a desire to have the property involved go to her son, and at first suggested that it be so provided in her will. The witness suggested that she deed the property direct to the son and that "he for her protection make this other deed back at the same time", (quoting his testimony directly) the second deed to be "held by me until after Mrs. Baldwin's (decedent's) death, and then, as I stated before, I either destroyed it or gave it back to Murray (the son)." The witness drafted both deeds at the same time and also prepared the decedent's will. It was his idea and suggestion that the purpose of the deed to the son "would save the expense of the administration there since it was her desire that he should have the property". The arrangement at that time was that Mrs. Baldwin would continue to receive the income from the property. Throughout these negotiations the witness was representing the decedent alone, to protect her interests. The son was not present at the time the decedent gave the witness his instructions concerning the preparation of the deeds. The son was present on some occasions when the three talked over the making of the deeds, but that he was not present at any time when there was any discussion of a confidential nature. These confidential legal discussions were had with the decedent alone. The only times that the son was brought into the discussion were when the witness told him that it was intended that he execute the deed. No explanation as to the legal reason was given the son. The son was "brought in just to tell him what you (we) were intending to do."

In urging the admissibility of the testimony of the attorney, the Government contends that the communications were not privileged because, as it alleges, (1) they were not in the first place intended by the decedent to be confidential (2) the decedent intended and instructed the attorney to communicate them to her son and (3) some, if not all, of the communications were in the presence of a third party, the son."

Section 907(a) of the Revenue Act of 1924, as amended by Revenue Act 1926, c. 27, § 1000, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 307, provides that proceedings of the Board shall be conducted in accordance with the rules of evidence applicable in courts of equity of the District of Columbia, and we therefore look to decisions of the Courts of that District to resolve the question before us.

In Elliott v. United States, 1904, 23 App. D.C. 456, page 468, the Court stated the rule as follows: "Professional communications, made by client to attorney, or communications passing between client and attorney, are, upon principles of public policy, and from the necessity of preserving confidence in all matters of business where the assistance or agency of an attorney is required, held to be privileged from disclosure; and this privilege is that of the client rather than that of the attorney. This privilege embraces all communications made by the client to his attorney for and in the course of the business for which the attorney may be employed. The latter cannot be permitted to disclose such communications, whether they be in the form of title deeds, wills, documents, or other papers delivered or statements made to him, or of letters, entries, or statements, written or made by him in that capacity. [Citing cases.] The protection is not qualified by any reference to proceedings pending or in contemplation, nor is it material that the client be in no manner before the court where disclosure is sought to be had * * *".

The privilege does not terminate by the death of the client. Glover v. Patten, 165 U.S. 394, 410, 17 S.Ct. 411, 41 L.Ed. 760.

Tutson v. Holland, 60 App.D.C. 188, 50 F.2d 338, 340, is one of the cases relied upon by the Government. It is urged that the cited case is authority for the admissibility of the evidence, on the theory that the presence of the son at some of the conferences destroyed the privilege. There the controversy involved a contract between the plaintiff and the defendant. The attorney for the plaintiff was called to testify as to conversations had at a conference at which all three had participated. The Court in holding the communications were not privileged pointed out the fact that the defendant in the action was one of the parties to the conference and stated the rule to be "the presence of a third party, particularly if he is an opposing party, indicates that the communication is not confidential or privileged". We do not have such a situation in the instant case. Here the third party to such conferences as were not private between the decedent and her attorney, was the decedent's son, who is

now objecting to the testimony both in his individual capacity and as Executor of his mother's estate. The reason for the rule announced in the Tutson case does not apply.

■ Rather, we have a situation like the one present in Hartness v. Brown, 21 Wash. 655, 59 P. 491, and the one discussed in Murphy v. Waterhouse, 113 Cal. 467, 45 P. 866, 54 Am.St.Rep. 365. In the latter case (page 470 of 113 Cal., page 866 of 45 P., 54 Am.St.Rep. 365) it is said: " 'When two persons address a lawyer as their common agent, their communications to the lawyer, so far as concerns strangers, will be privileged; but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations.' "

In the Hartness case, page 494 of 59 P., the Court answered the argument that only one of the persons to the conference was the client, as follows: "It seems that counsel were impressed with the idea that Wiswell [the grantor] alone was their client, as he is the one who paid them; but the advice upon this matter in which both plaintiff [the grantee] and Wiswell were directly interested was given to both, though not formally at any request from the plaintiff. The information received by the counsel witnesses was attributable solely to their professional character. It was given to them for advice, and it is immaterial here to determine, under the circumstances surrounding the consultation, whether the actual relation of attorney and client existed between the plaintiff and counsel witnesses. The disclosures made to the counsel witnesses by the plaintiff, under the circumstances, are within the privilege declared by the statute."

From the language of the District of Columbia Court in the Tutson case, supra, we are certain that the rule anounced by the California and Washington courts above would be followed.

■ All of the cases cited by the Government to support the position that the presence of the son at some of the conferences destroyed the privilege are cases where the dispute was between the two parties to the conference with the attorney. There the rule of Murphy v. Waterhouse, supra, comes into play, and allows the attorney to testify as to the negotiations between the parties. But in the instant case

the Commissioner is a stranger to the negotiations, and is not claiming under either the mother or the son. It is our opinion and we hold that in such circumstance the privilege is not destroyed.

The Government also cites as authority for its position cases to the effect that instructions given by a testator to his attorney in the preparation of a will are not privileged. An examination of these cases discloses that they announce the rule that where the contest is between the heirs or next of kin or the decedent, the attorney who drew the will may testify as to the true intent of the testator.

Glover v. Patten, 165 U.S. 394, 17 S.Ct. 411, 416, 41 L.Ed. 760, is illustrative. We quote:

" * * * We are of the opinion that, in a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged. *While such communications might be privileged if offered by third persons to establish claims against an estate,* they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin. * * *

" 'In the one case the question is whether the property belongs to the client or his estate, and the rule may well apply for the protection of the client's interests. In the other case the question is to which of two parties claiming under the client the property in equity belongs, and it would seem to be a mere arbitrary rule to hold that it belongs to one of them, rather than to the other.' " (Emphasis supplied.)

■ The Government next cites cases as authority that instructions to an attorney, the holder of a deed delivered in escrow, are not privileged. Collette v. Sarrasin, 184 Cal. 283, 193 P. 571; Keohane v. Keohane, 38 Cal.App. 405, 176 P. 386; and Hager v. Shindler, 29 Cal. 47.

The point is that the testimony of the attorney was merely as to the fact of the execution and delivery of the deeds; that the deeds were made with a view to publicity, and that there was therefore nothing confidential in the communications.

But this argument overlooks the true nature of attorney Cosgrave's testimony. His testimony, and the testimony on which the Board based its decision, was as to the *legal reasons* for the execution of the deeds. He testified that he had advised the mother

to deed the property rather than leave it by will and thus avoid probate expenses.

It is our opinion and we hold that it was error for the Board to admit the testimony of Cosgrave concerning the exchange of deeds between the mother and the son.

Without the attorney's testimony there is no testimony in support of the Board's decision that the transfer was one intended to take effect in possession or enjoyment at or after death, nor is there evidence to support a finding that it was in contemplation of death.

Reversed with directions to take proper proceedings in accordance herewith.

HANEY, Circuit Judge (dissenting).

Section 302(c) of the Revenue Act of 1926 as amended provides that the value of the gross estate of the decedent shall include the value of real property " * * * To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom * *."

Decedent executed and acknowledged a deed of gift covering real property in Texas to petitioner on February 25, 1931. A deed of gift from petitioner to decedent was prepared at the same time as the first deed mentioned, but it was not executed and acknowledged until April 4, 1931. The first deed was recorded, but the second deed was given to one Cosgrave, an attorney, to hold and to record in the event that petitioner predeceased decedent. Upon decedent's death, Cosgrave and petitioner were appointed joint executors of decedent's will. Petitioner filed on January 22, 1935, an estate tax return, but did not include the value of the Texas real property, and Cosgrave refused to execute that return. Cosgrave filed an estate tax return on January 22, 1935, in which he stated that the deed of gift made by decedent was "a transfer in contemplation of or intended to take effect in possession or enjoyment at or after her death".

The Board found that the transfer of the property to petitioner by decedent "was intended to take effect in possession at or after death". Determination of the intent with which an act is done is the determination of a question of fact.[1] The statement in the return above quoted is not, therefore, a conclusion of law, but the statement of a fact. The record discloses no objection to that evidence. Such evidence is substantial and supports the finding of the Board. It, therefore, is unnecessary to consider whether the rule of privileged communications is a "rule of evidence" and if so, whether it is applicable to the oral testimony of Cosgrave, because the Board's finding is supported by substantial evidence in any event.

The Board's decision should be affirmed.

---

[1] Flack v. Holtegel, 7 Cir., 93 F.2d 512; Updike v. Commissioner, 8 Cir., 88 F.2d 807. Compare: Commissioner v. Cecil De Mille Productions, 9 Cir., 90 F.2d 12.