## SMART et al. v. UNITED STATES.

District Court, W. D. Missouri, W. D.   April 15, 1927.

No. 6139.

1. Internal revenue ⊚⊐8(11)—Conveyances by aged grantor held not made "in contemplation of death," within meaning of statute (Revenue Act 1918, §§ 400–410 [Comp. St. §§ 6336¾a–6336¾k]).

Conveyances of land *held* not made by grantor "in contemplation of death," within meaning of Revenue Act 1918, §§ 400–410 (Comp. St. §§ 6336¾a–6336¾k), notwithstanding ad-

vanced age and expectancy of death in near future.

2. Internal revenue ⊚⊐8(11)—That aged grantor must realize that death is not distant is alone insufficient to show conveyance made in contemplation of death (Revenue Act 1918, §§ 400–410 [Comp. St. §§ 6336¾a–6336¾k]).

That aged grantor must realize that death is not far distant is not alone sufficient to show conveyance made in contemplation of death, within Revenue Act 1918, §§ 400–410 (Comp. St. §§ 6336¾a–6336¾k).

3. Internal revenue ⊚⊐38(3)—Persons holding 99 per cent. of estate of decedent held not volunteers in payment of additional tax assessed, as affecting right of recovery (Revenue Act 1918, §§ 400–410 [Comp. St. §§ 6336¾a–6336¾k]).

Persons holding 99 per cent. of estate of decedent, and paying additional tax assessed under Revenue Act 1918, §§ 400–410 (Comp. St. §§ 6336¾a–6336¾k), after demand and implied threat of collection of property held by them, *held* not mere volunteers, not entitled to recover tax so paid.

At Law. Action by Thomas A. Smart and others against the United States. Judgment for plaintiffs.

Smart & Strother, of Kansas City, Mo., for plaintiffs.

Harry Thomas, Ass't U. S. Atty., of Kansas City, Mo.

OTIS, District Judge. Plaintiffs bring this action to recover from the United States the sum of $18,852.01, with interest thereon, alleged to have been erroneously and illegally assessed against the estate of Mrs. Amanda Caroline Graves. The petition alleges the death testate of Mrs. Graves July 28, 1919, the payment on July 17, 1920, by the executor under her will of an estate tax in the amount of $3,477.90, and the subsequent assessment, after the discharge of the executor and the distribution of the estate, of an additional tax of $18,946.11. It alleges that of the additional assessment the amount sued for in this case was based on the inclusion by the Commissioner of $413,000, the value of three pieces of real property transferred to the plaintiffs by Mrs. Graves during her life. The Commissioner claimed, the petition alleges, that these transfers were made in contemplation of death. It is alleged that the plaintiffs paid the additional assessment under protest. It is claimed by the plaintiffs that the transfers in question were not made in contemplation of death, and that, in any event, title 4 of the Revenue Act of 1918 (Comp. St. §§ 6336¾a–6336¾k), if held applicable to transfers made prior to the passage of that act, is unconstitutional.

Defendant's answer is a general denial

and a plea that plaintiffs do not have capacity to sue. The issues of law and fact were submitted to the court. Evidence was introduced by the plaintiffs upon the issue as to whether the transfers of property involved were made in contemplation of death. The defendant produced no evidence upon this issue, and made no attempt to overcome the plaintiffs' case except by cross-examination of plaintiffs' witnesses. The following facts, among others, were established by the testimony:

Mrs. Graves died July 28, 1919. She transferred by deed the first of the three tracts involved, being a tract of the value of $400,000, to her daughter, Martha E. Bacon, on January 26, 1914, 5 years and 6 months prior to her death. She transferred by deed the second of the three tracts involved, being a tract of the value of $10,000, to her granddaughter, Emma S. Donaldson, on October 26, 1914, 4 years and 9 months prior to her death. She transferred by deed the third of the three tracts involved, being a tract of the value of $3,000, to her grandson, Langston M. Bacon, on October 14, 1916, 2 years and 9 months prior to her death.

Each of the tracts in question was transferred more than two years before the passage of the act under which the tax was assessed. At the time of the first of the three transfers Mrs. Graves was 84 years of age, at the time of the second she was 85, and at the time of the third she was 87. At the time of the first of the three transfers Mrs. Graves was in her usual health. At the time of the second and third transfers, although ill, she was not suffering from any fatal malady, but from rheumatism, with which she had been afflicted for years. She said nothing to any one at any time which indicated any expectation on her part of imminent death.

Mrs. Graves gave as her reason for making the first of the three transfers her fear that the income value of the property involved would be largely destroyed (by the loss of a valuable tenant) unless the property was immediately improved at a cost far beyond her means. She did not feel able, because of her age, to undertake or to carry through the financial arrangements necessary to save the property—to save, that is, its income-producing value. In this connection the testimony showed that the tenant had indicated an intention of leasing other property, or building elsewhere, unless the property were immediately improved.

Mrs. Graves' will, made before the first of the transfers in question, provided for the disposition at her death of each of these properties to the same persons as those to whom they were transferred by deeds.

There are three issues in the case, one of fact and two of law. The issue of fact is: Were these transfers made by Mrs. Graves in contemplation of death? The issues of law are: First, even if the transfers were made in contemplation of death, is the act constitutional as to that provision which includes transfers made prior to its passage; and, second, if the assessment of the tax was illegal, either because the transfers were not made in contemplation of death, or because the act is invalid in the respect mentioned, were these plaintiffs mere volunteers, and not, therefore, in law entitled to recover the tax paid by them?

1. What is meant by the phrase "in contemplation of death," as used in the act, is very well expressed in two cases, one cited by the plaintiff, and one cited by the defendant. In the first of these cases, Meyer et al. v. United States, 60 Ct. Cl. 474, it is said that by the words "in contemplation of death" is meant:

"That state of mind which, by reason of advanced age, serious illness, or other producing cause, induces the conviction that death in the near future is to be anticipated. If it be said that there need not be a conviction that death is imminent, there must at least be a belief that it is to be expected in the very near future, rather than in the usual course of events. And in this state of mind, in this belief in the near approach of death, must be found the motive for the conveyance, if it is properly to be characterized as made in contemplation of death."

In the second of the two cases, Shwab v. Doyle (C. C. A.) 269 F. 321, 328, it is said that:

"By the term 'in contemplation of death' is not meant, on the one hand, the general expectancy of death which is entertained by all persons, for every person knows that he must die. * * * On the other hand, the meaning of the term is not necessarily limited to an expectancy of immediate death or a dying condition. * * * The term 'in contemplation of death' involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in contemplation of death if the expectation or antici-

pation of death in either the immediate or reasonably [near] future is the moving cause of the transfer."

These definitions are not essentially dissimilar. Guided by them, we are warranted in saying that if, when Mrs. Graves made these transfers, there was in her mind an expectancy of death in the near future (and not merely in the usual course of events), and if that expectancy was the moving cause of the conveyances, then they were made in contemplation of death.

[1, 2] When the evidence in the case is considered in the light of this test, it does not seem to me that it can be said that the transfers were made by Mrs. Graves in contemplation of death. It is true that, when each of the transfers was made, she had attained a great age. That is the only fact supporting the contention of the defendant. It is not sufficient. While it is certain that a very aged person must realize that death is not far distant, it cannot be said, in the absence of any other proof as to apprehension of death, that such a person, from the fact of age alone, apprehends death as imminent and likely shortly to occur out of the natural course of events. If, at the time of the transfers, Mrs. Graves had had knowledge, not only of her great age (of which, of course, she did have knowledge), but had knowledge also that she was then suffering from an illness likely to be fatal, the knowledge of these two facts might justify a conclusion that she expected death imminently. But she did not have knowledge that she was suffering from a fatal illness. She was not suffering from a fatal illness. Her illness was one from which she had suffered for 40 years. Therefore I think that it cannot be said that she had in her mind the expectancy of death in the near future. Moreover, even if it might be said from the evidence that she did have such an expectancy in her mind, it seems to me it cannot be said that was the motive actuating the transfers of the property in question. The evidence points to other motives that much better explain and justify the transfers. The transfers were not made within two years prior to the death of Mrs. Graves, and there is no presumption under the act that they were made in contemplation of death.

2. If the transfers were not made in contemplation of death, then the additional tax, in so far as it involved these transfers, was illegally assessed, and it is unnecessary to pass upon the constitutionality of that provision in the act which includes transfers made before its passage. But I have consid-

ered the arguments of counsel on that question, and have read the cases cited. The exact question does not seem to have been passed on by any court. Without passing on the question, it seems to me that there is much force in the argument made by plaintiffs. In the face of the "due process" provision of the Fifth Amendment to the Constitution and of the constitutional prohibition against direct taxation of property by Congress, it is difficult to justify a retroactive taxing law that in effect compels one person, who is the absolute owner of property lawfully acquired by him from a second person long before the second person's death, to pay out of that property tax which is assessed against the estate of the second person as a tax upon the second person's privilege of transmitting his property at death; and it is difficult to justify the inclusion within the gross estate of a decedent of property which long before his death had ceased to be any part of his estate.

[3] 3. It is urged by the defendant that the plaintiffs were under no obligation to pay this tax, that they were mere volunteers, and that one who voluntarily pays another's tax may not sue to recover the amount paid. It is undoubtedly true that this tax was levied neither upon the plaintiffs nor their property, but upon the estate left by Mrs. Graves. United States v. Woodward, 256 U. S. 632, 635, 41 S. Ct. 615, 65 L. Ed. 1131. No direct attempt was made to collect from the plaintiffs, or out of the property they had received from Mrs. Graves. No attachment or distraint of their property was either begun or expressly threatened. But payment was demanded within 30 days, if interest at the rate of 10 per cent. was to be avoided. The executor had been discharged. The estate had been closed. The plaintiffs had 99 per cent. of the estate. The law subjected the property which they held to a lien for the amount of the unpaid tax. Under such circumstances, the demand for payment impliedly carried with it a threat of collection out of the property plaintiffs had. In effect, therefore, payment of the tax was demanded of these plaintiffs under threat of distraint and penalties. They were not volunteers, and they did pay under duress. It follows that they were entitled to bring this suit, and to recover any tax paid by them which was illegally assessed.

4. In accordance with the foregoing views, of the findings of fact requested by the plaintiff I make the following, including them herein by reference: Plaintiffs' requested findings of fact No. 1, No. 2, No. 3, No. 4, No. 5, No. 6, No. 7, No. 8, No. 9, No. 10,

No. 11, No. 12, No. 13, No. 14, No. 15, No. 16, No. 17, and No. 18. I further adopt the following of the plaintiffs' requested declarations and conclusions of law, and incorporate the same by reference herein, No. 1, No. 2, No. 3, No. 4, No. 5, No. 6 and No. 7.

## Judgment.

It follows, from the foregoing findings of fact and conclusions of law, that the plaintiffs should have judgment, and it is therefore ordered that judgment be for the plaintiffs and against the defendant in the amount of $18,852.01, with interest as prayed, and for costs. Plaintiffs may submit for the court's approval a formal decree.