**RENGSTORFF et al. v. McLAUGHLIN, Collector of Internal Revenue.**

District Court, N. D. California, S. D. May 5, 1927.

No. 17586.

1. **Internal revenue** ⊜⟶8(11)—**Transfers "in contemplation of death," for estate tax purposes, need not be in contemplation of imminent death (Revenue Act 1918, § 402c [Comp. St. § 6336¾c]).**

A transfer "in contemplation of death," within Revenue Act 1918, § 402c (Comp. St. § 6336¾c), need not be one made in anticipation of immediate demise as the result of an existing illness or injury, but is within the statute if anticipation of death in the immediate or not unreasonably distant future is the moving cause of the transfer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contemplation of Death.]

21 F.(2d)—12

2. **Internal revenue** ⊜⟶8(11)—**Transfers of property by a woman 83 years old to her children held made "in contemplation of death" (Revenue Act 1918, § 402c [Comp. St. § 6336¾c]).**

Transfers by a woman 83 years old, in connection with the making of her will, of substantially two-thirds of her property, to her children, *held* made "in contemplation of death," and the property subject to tax as part of her estate, under Revenue Act 1918, § 402c (Comp. St. § 6336¾c).

At Law. Action by Henry A. Rengstorff and another, executors of the will of Christine F. Rengstorff, deceased, against John P. McLaughlin, Collector of Internal Revenue. Judgment for defendant.

Thomas & Sullivan, of San Francisco, Cal., for plaintiffs.

George J. Hatfield, U. S. Atty., and Chellis M. Carpenter, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. This is an action by the executors of the estate of Christine F. Rengstorff, deceased, to recover $5,400 paid under protest as a tax on property valued at $210,000, which plaintiffs claim was erroneously included in the estate of the deceased upon a reassessment thereof by the Commissioner of Internal Revenue.

The record shows that the property in question was transferred on June 19, 1912, in three equal parts, each worth $70,000, by several conveyances, to Henry A. Rengstorff, Elsie M. Haag, and Christine F. McMillan, respectively, children of the decedent. At the time of the conveyances the decedent was 83 years of age and in good health, and the transfers comprised more than two-thirds of her entire estate. On July 18, 1912, less than a month later, she executed her will, by which, after creating trusts of $22,500 each in favor of four grandchildren, she devised the residue to her three children above named. At the time of making this will her eldest son, John, was still living, and although he received no benefit either by the transfers of June 19, 1912, or under the will, it was declared in the will that he had been already provided for, and it appears in fact that in the years 1887 and 1889 the father of these children—the husband of the decedent—gave John approximately $55,000, stating at the time, "It would come to him some time, and he might as well have it now." The decedent died in the year 1919, having lived 7 years after the execution of the conveyances of June 19, 1912. At the time of their execution, the decedent's life expectancy was 3.39 years. At about this time, also, one of the grantees, Elsie M. Haag, en-

tered into an agreement with her mother, by the terms of which she was to take care of her and to receive therefor the sum of $60 a month. Mrs. Haag thereupon moved into her mother's home for the purpose of carrying out the agreement. After her mother's death, she presented a claim for $5,540 to the executors of the estate, which was allowed. After his father's death, Henry A. Rengstorff managed his mother's property and received for this service $40 a month.

The questions presented for determination are:

(1) Were the transfers of June 19, 1912, made "in contemplation of death," within the meaning of the Revenue Act of 1918 (approved Feb. 24, 1919) tit. 4, § 402, subd. (c), being Comp. St. § 6336¾c?

(2) If they were such, was each of them made for a bona fide consideration, on money or money's worth, within the meaning of said statute?

The statute reads as follows:

"Revenue Act of 1918.

"Title IV.—Estate Tax.

"Section 400. * * *

"Section 401. * * *

"Section 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) * * *

"(b) * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer * * * in contemplation of * * * his death (whether such transfer of trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth."

The object of taxing transfers of property of the character here considered (as is conceded by all of the authorities) is to avoid the loss of revenue which would otherwise result as a consequence of the withdrawal of the property from the operation of laws taxing transfers by succession or effected through the means of testamentary disposition.

[1] A transfer, in order to be characterized as one "in contemplation of death," need not be one made in anticipation of imminent demise as the result of an existing illness or malady, as in the case of a gift causa mortis. On the contrary, it is possible that a person of comparative youth, enjoying good health, may nevertheless make a transfer of property "in contemplation of death," within the mean-

ing of that phrase. Estate of Pauson, 186 Cal. 358, 199 P. 331; Chambers v. Larronde, 196 Cal. 100, 235 P. 1024, 41 A. L. R. 980. In the case of Shwab v. Doyle (C. C. A.) 269 F. 321 (reversed by the Supreme Court on another point in 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454), it is held that:

"By the term 'in contemplation of death' is not meant, on the one hand, the general expectancy of death which is entertained by all persons, for every person knows that he must die. * * * On the other hand, the meaning of the term is not necessarily limited to an expectancy of immediate death or a dying condition. * * * The term 'in contemplation of death' involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in contemplation of death if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer."

It may be argued that, since no federal Inheritance Tax Law was in effect at the time the transfers in question were made, no evasion of such tax could have been contemplated by the decedent, and that therefore, by reasoning from this innocence of mind, the gifts were not "in contemplation of death," within the act of 1918. It should be noted in this connection, however, that there was at that time, and had been long prior thereto, such a statute in operation in California. In any event, in view of the retroactive effect of the federal act, such speculations are unimportant. The essential question is as to whether these transfers of property were in fact "in contemplation of death."

[2] In the instant case we have a person 83 years of age, whose life expectancy was less than 3½ years, and who knew that in the ordinary course of nature she had not very long to live, transferring a large proportion of her property to her natural heirs. In fact, while her will was made about one month after the deeds were executed, the instructions for drawing all the documents were given by the decedent to her attorneys at the same time, and so far as these documents are concerned they are so intimately related as to constitute but one transaction. The fair—indeed, the obvious—conclusion is that the transfers were made in contemplation of death and to effect

a disposition which Mrs. Rengstorff would otherwise have made by will, or allowed to be brought about by the operation of the laws of succession.

As to the second question, it is claimed that the transfers were made in consideration of a promise made and performed by the children concerned that they would remain home and help operate the property. There is no merit in this contention. It is wholly unsupported by the evidence.

Since this opinion fully expresses the conclusions upon which the judgment rests, no findings will be made.

Judgment for defendant, with costs.