**OFF et al. v. UNITED STATES.**

District Court, S. D. Illinois, N. D. July 29, 1929.

No. 2401.

FITZHENRY, District Judge. This action is brought by Charles D. Off, Walter Off, Clifford Off, and Clarence Off, as trustees under the will of Charles J. Off, deceased, to recover the sum of $3,468.15, paid as an estate tax on account of the estate of Charles J. Off, deceased.

The testator died at Peoria, Ill., June 26, 1920, leaving a will dated April 8, 1919, which was duly admitted to probate in Peoria county. In it plaintiffs were named as executors and trustees. As executors they completed the administration of the estate and are now acting as trustees.

On April 9, 1919, the day following the making of the will, Charles J. Off transferred, as a gift, to his four sons, Charles, Walter, Clifford, and Clarence Off, 1,959 shares of the capital stock of the Groveland Coal Mining Company, valued at $147,000. The remaining property of the estate had a value of $326,998.08. The transfer of this stock was held by the Commissioner of Internal Revenue to have been made in contemplation of death, and the value thereof was included by him in the gross estate, for the purpose of computing the tax. The tax in dispute resulted from this action of the Commissioner. A claim for a refund was filed and rejected by the Commissioner; whereupon this suit was instituted.

The action of the Commissioner was taken under a provision of the Revenue Act of 1918 (40 Stat. 1097), the applicable part of which is as follows:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

The question involved is: Did the Commissioner of Internal Revenue properly in-

J. E. Houston and Covey, Campbell & Covey, all of Peoria, Ill., for plaintiffs.

Walter M. Provine, U. S. Atty., of Springfield, Ill.

clude in the gross estate of the decedent, as a measure of the federal estate tax, the sum of $147,000, being the value of 1,959 shares of the capital stock of the Groveland Coal Mining Company, transferred April 9, 1919, by decedent, as a gift to his four sons?

Sec. 402(c) contains this phrase, which is very important here: "Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

The will was dated April 8, 1919; the stock involved was assigned by the deceased to his sons April 9, 1919; the testator died June 26, 1920. The phrase in the statute "in contemplation of death" has been the cause of considerable conflict in the reported cases. In the earlier decisions it was construed to refer solely to that mental state which accompanies gifts causa mortis. Some of the more recent cases adopt a broader view, and a tendency to further change is apparent. It is clear, however, that the phrase "in contemplation of death," as used in taxing statutes, does not refer to the general expectancy of death which all people must entertain, but there must be something in the nature of a special contemplation of death operating as a proximate cause for such action, some facts tending to show that the disposition itself is of a testamentary character, as it was acts of this character for which Congress endeavored to make provision.

The phrase in section 402 cannot be considered as standing alone, but must be construed and applied in connection with the other sentences employed in the same paragraph in order to determine the true intent and purpose of Congress.

In the case at bar there is evidence tending to show that: (1) The donees of the stock in question were sons of the deceased; (2) that they had been largely instrumental in developing the property, some of them having given it considerable of their time for a number of years; (3) that the day before the gift was made by the father to the sons, he had executed his last will and testament which was to become effective under the law as of the date of the testator's death, when the will was admitted to probate; (4) that on the day following the execution of the will, the testator, for reasons satisfactory to himself, concluded to make an immediate gift of the shares of stock involved to the

sons, and assigned and delivered it to them with no understanding or condition limiting or qualifying the interest of the sons in the several blocks of stock assigned, and, that they were given the use and disposition thereof; (5) that the donees of the stock went into immediate possession; (6) that it was known that the sons, the donees, were anxious to get control of the Groveland Coal Mining Company, as there were existing outstanding interests other than those of the family; and that, following the assignment of the stock, the sons caused themselves to be elected directors and took over the control of the coal mining corporation property; (7) that there is no evidence of any kind tending to show that between the date of the execution of the will and the next day when the stock was assigned, anything happened to cause the testator to believe death was imminent, or there was any reason to nullify the testamentary disposition which he had made the day before, other than the desire to see his sons in possession of the control of the company and in the ownership of his stock, without awaiting the event of his death; (8) that there was no causal connection between the execution of the will and the later gift to the sons of the deceased; and (9) that the donor reserved to himself no interest in or control over the stock in question, or the income therefrom.

It is earnestly contended on behalf of the Government that the last sentence in paragraph c of section 402 casts the burden of showing that the transfer in question was not made "in contemplation of death" upon the petitioners, and that petitioners have not sustained that burden.

The evidence in this case establishes the fact that on the 8th day of April, 1919, at a time when the testator was in normal health so far he knew, although in advanced years, he executed his last will and testament, giving to his four sons, among other things, the stock in question in substantially equal parts. The evidence does not show who wrote the will, how it happened to be made, or anything concerning it. It may have been a will which the testator had prepared himself and had carried around in his pocket for a considerable length of time. However, after the execution of the will on April 8, 1919, in the natural course of events, he must have contemplated the consequences of his act, when upon 'the next day he reached the conclusion that he did not want his sons to wait until after he had died to come into ownership and enjoyment of the stock, but wished them to

have it immediately. It was undoubtedly valuable stock and undoubtedly gave him satisfaction to know they had it and had the opportunity of enjoying it during his lifetime.

It is strenuously urged that, because the execution of the will and the gift of the stock to the sons the next day came so closely together, they were a part of the same transaction, and that the two transactions should be construed together as a single testamentary disposition of the property here involved. This contention is urged upon the authority of Rengstorff v. McLaughlin (D. C.) 21 F.(2d) 177; Shwab v. Doyle (C. C. A.) 269 F. 321; State v. Pabst, 139 Wis. 561, 121 N. W. 351; In re Dupignac's Estate, 96 N. J. Eq. 284, 125 A. 119.

In the Rengstorff Case, supra, the will was made about one month after the deeds were executed. The instructions for drawing all the documents were given by the decedent to her attorneys at the same time. Naturally, they would be considered as intimately related to each other and constitute one transaction. In the Shwab Case, supra, the recitals in the trust deed and in decedent's will show that they were interrelated and part of the same transaction. In State v. Pabst, supra, the execution of the deed and gift and the will were simultaneous. In that case the decedent knew his condition and was aware of the outcome to be inferred from his symptoms. In the Dupignac Case, supra, "the gift * * * was contemporaneous with the making of a codicil to decedent's will."

In this case, it is apparent that, between the time of the execution of the will and the making of the gift, the decedent concluded he wanted to nullify the testamentary disposition in the will and change the stock from a gift causa mortis to a gift inter vivos, which was the effect of what he did. The decedent had a perfect right to do exactly what he did, and, from the nature of the transaction, it is scarcely possible that he gave the estate tax feature the slightest consideration. The transaction shown by this evidence discloses the fact that the testator did not wish to make a testamentary disposition of the stock, but rather a gift in præsenti.

The rule with reference to determining when a gift is made "in contemplation of death" was very aptly stated in Spreckels v. State, 30 Cal. App. 363, 158 P. 549, 551, where it was said: "A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death that the property so transferred becomes amenable to the burden; or, as counsel for the respondents with singular aptness states the proposition: 'It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax.'" And this statement is in harmony with the great weight of authority. Gaither v. Miles (D. C.) 268 F. 692; Polk v. Miles (D. C.) 268 F. 175; Vaughan & Security Trust Co. v. Riordon (D. C.) 280 F. 742; People v. Danks, 289 Ill. 542, 124 N. E. 625, 7 A. L. R. 1023; Rosenthal v. People, 211 Ill. 306, 71 N. E. 1121; People v. Carpenter, 264 Ill. 408, 106 N. E. 302; People v. Porter, 287 Ill. 405, 123 N. E. 59, 7 A. L. R. 1041; People v. Shaffer, 291 Ill. 145, 125 N. E. 887; Baker's Estate, 83 App. Div. 530, 82 N. Y. S. 390, affirmed in 178 N. Y. 575, 70 N. E. 1094; Smart et al. v. United States (D. C.) 21 F.(2d) 188.

The United States Court of Claims in Meyer v. United States, 60 Ct. Cl. 474, recognized and applied the general rule. In a later case, Safford v. United States, 66 Ct. Cl. 242, decided October 8, 1928, one of the paragraphs in the opinion of the court took a rather advanced view, and it is contended on behalf of the government that the rule recognized in the Meyer Case, supra, has been broadened. The paragraph referred to is as follows: "*The writer of this opinion,* however, *thinks* that the construction of the words 'in contemplation of death' set out in the opinion in the Meyer Case is altogether too narrow. 'Contemplation' may mean 'expectation,' but this meaning cannot be applied without qualifications, as the opinion in that case shows. In common use 'contemplation' means 'consideration with attention' and making a transfer 'in contemplation of death' would, *as the writer thinks,* mean that the transfer was actuated or brought about by a consideration of death with attention. There would seem to be no reason why, if Congress meant 'expectation' by the use of the word 'contemplation' it would not have used the former word instead of another which might or might not have that meaning."

From this paragraph it will be observed that "the writer of this opinion thinks," etc., and, also, "as the writer thinks." This paragraph which seeks to broaden the well-established rule was purely the personal view of the learned judge who wrote the opinion. An examination of the report discloses that of the other four judges, three of them, Judges Sinnot, Moss, and Booth, concurred only in the result, and Judge Graham took

no part in the decision of the case. So, the paragraph quoted and relied upon cannot be regarded as the opinion of the court, and that decision is binding only as to the result found in the particular case. It is possible that the attempt, in the opinion, to broaden the rule in the Meyer Case was the cause of the learned judge's colleagues concurring only to the extent of approving the result. That paragraph is clearly an attempt to liberally construe the statute in question in the interests of the government. The expression in the opinion in the Meyer Case which it was sought to broaden in the Safford Case, supra, is as follows: "A review of the authorities is scarcely necessary to sustain the proposition that the contemplation of death referred to in the statute is not that contemplation of death which must be present with all of us, mindful of its certainty at some time, we know not when, but it is that state of mind which by reason of advanced age, serious illness, or other producing cause induces the conviction that death in the near future is to be anticipated. If it be said that there need not be a conviction that death is imminent, there must at least be a belief that it is to be expected in the very near future rather than in the usual course of events. And in this state of mind, in this belief in the near approach of death, must be found the motive for the conveyance if it is properly to be characterized as made in contemplation of death."

If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown.

■ The attempt, in the Safford Case, supra, to broaden the statute by construction, involved a disregard of the fundamental rule that, in the construction of a taxing statute, doubts should be resolved against the government and in favor of the taxpayer. American Net & Twine Co. v. Worthington, 141 U. S. 468, 12 S. Ct. 55, 35 L. Ed. 821; Benzinger v. United States, 192 U. S. 38–55, 24 S. Ct. 189, 48 L. Ed. 331; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211. In other words, if a taxpayer is clearly within the statute, the tax applies; if there is a reasonable doubt as to whether the taxpayer is within the statute, he is without.

■ In view of the facts, that at the time of the execution of the will, April 8, 1919, and the transfer of the stock in the Groveland Coal Mining Company, April 9, 1919, the decedent, Charles J. Off, was in and about his affairs as usual; that he had frequently expressed a desire to see his stock owned by his sons, to assist them in gaining the control and direction of the company; that he lived 16 months thereafter, and it was not discovered until several months after the transaction here involved that he was afflicted with an ailment which might cause his death, and which did so almost a year thereafter; that he was apparently in perfect health at the time in question, did vigorous physical work on his Indiana farm, and walked up the stairway to his office in his building almost as readily as his sons; and in the light of the additional fact that a consideration of the transaction discloses that the transfer to his sons was absolute and irrevocable; that he retained no interest in or claim to the subject-matter of the gift, that the gift of the stock acted as a revocation of the gift he had made the day before in contemplation of death by the execution of his will upon considerations which were good and valuable and satisfactory to himself—it cannot be said that the gift was made to the sons in contemplation of death.

It is affirmatively shown that the attending physician who had charge of the decedent during his last illness never at any time advised decedent that his condition of health was grave, never told him of the serious nature of his affliction, and, so far as the record shows, the decedent had no knowledge of his condition, except that during the last several months prior to his death he was kept at home. In the death certificate the doctor certified that Mr. Off's death was due to cachexia as the complication, but testified that, while the complication may have run a couple of years, yet it was not until August, 1919, that the physician discovered it, and never advised the deceased of it.

Throughout the growth and development of the Groveland Coal Mining Company there was evidence to sustain the conclusion that the deceased had always regarded the interest in the property which was evidenced by his stock as being that of his sons.

These facts in our judgment are of sufficient evidentiary value to overcome the presumption of the statute, the gift having been made within two years prior to the death of the decedent.

■ It has been suggested that, because an inheritance tax was collected by the state of Illinois from the Off estate and the value of the shares of stock here in question estimated as a part of the estate, therefore the plaintiffs could not be heard to complain here. We feel that plaintiffs' transaction with the state of Illinois was not res adjudicata of

the issues here by any of the well-known rules governing that subject. It might as well be said that in the first instance here petitioners paid the tax sought to be recovered.

In harmony with the views herein expressed, petitioners' requests for findings of fact 1 to 9, inclusive, are allowed and granted; their requested holding as a conclusion of law allowed and held. The requests on behalf of the defendant for findings of fact 2, 4, and 12 are denied as requested, but modified and allowed as modified, and, with these modifications, requests Nos. 1 to 19, inclusive, are allowed and the facts found. Defendant's requests for conclusions of law, being Nos. 20, 21, 22 and 23, are denied.