## UPDIKE v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 10718.

Circuit Court of Appeals, Eighth Circuit.

March 6, 1937.

*Rehearing denied April 1, 1937. Writ of certiorari denied 57 S.Ct. 942, 81 L.Ed. ——.

808

Alfred G. Ellick, of Omaha, Neb. (Edward J. Shoemaker, of Omaha, Neb., on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Edward Updike, a resident of Omaha, Neb., died July 29, 1931, at the age of 91 years, 10 months, and 6 days. The Commissioner of Internal Revenue, in 1934, gave notice to his three sons of a proposed assessment against them of $11,401.93 constituting their liability as transferees of property of the deceased under section 315 (b) Revenue Act 1926, 44 Stat. 80 (see 26 U.S.C.A. § 427 (b), and section 316 of the Revenue Act of 1926 (26 U.S. C.A. § 500 and note) and as fiduciaries under section 3467 of the Revised Statutes of the United States (31 U.S.C.A. § 192) on the ground that the transfer was made in contemplation of death. Petition for redetermination of the assessment was filed with the United States Board of Tax Appeals within the statutory period, and the case comes here on petition of one of the sons for review of the order of redetermination of the Board confirming the proposed assessment by the Commissioner.

Two questions are presented for review:

(1) Is there any substantial evidence in the record to sustain the decision that the transfer was made in contemplation of death?

(2) If so, was the tax properly calculated?

The transfer in question was made by Edward Updike on May 5, 1926, when he was 85 years, 7 months, and 11 days of age. On that day by "Deed of Gift" he transferred to his three sons jointly substantially all of his property consisting of securities of the value at the time of his death of $453,871.45. On the same day he executed his will, naming his three sons as beneficiaries, share and share alike, of all his property.

At the same time, and as a part of the same transaction, the three sons executed and delivered to their father an agreement in writing, reciting that in consideration of love and affection, and other good and valuable considerations, they jointly and severally agreed to pay to him during his life the yearly sum of $27,000 in four equal quarterly payments, free and clear of all taxes, including federal taxes.

In connection with these transactions, and at the request of the father, the three sons orally agreed to pay the sum of $70,000, being $10,000 each, to the seven grandchildren of the deceased, and $1,000 to his brother. The payments were immediately made by the sons out of the transferred assets.

At the oral request of the deceased the sons set aside $190,000 of the securities transferred to secure the payment of the annuity.

From May 5, 1926, to the date of decedent's death, on July 29, 1931, the $27,000 annuity was paid by the transferees in quarter yearly payments.

The two findings of the Board claimed to be erroneous in the petition for review are that:

(1) The transfer of substantially all of decedent's property of May 5, 1926, was not a "bona fide sale for an adequate and full consideration in money or money's worth" and was made in contemplation of death.

(2) The value of an annuity of $27,000 payable quarterly on the life of a man 85½ years of age was $69,700.76; that that amount only was deductible from the value of the transferred securities ($453,871.45); and that the balance of $384,170.69 was includable in the gross estate.

It is conceded at the outset by counsel for the petitioner that in reviewing decisions of the 'Board of Tax Appeals this court is limited to a consideration of errors of law, and that the Board's findings may not be disturbed if there is any substantial evidence to support them. Flannery v. Willcuts (C.C.A.8) 25 F.(2d) 951; Washburn v. Commissioner (C.C.A.8) 51 F.(2d) 949; Neal v. Commissioner (C.C.A.8) 53 F.(2d) 806, 807; Whitlow v. Commissioner (C.C.A.8) 82 F.(2d) 569; Richards v. Commissioner (C.C.A.9) 81 F.(2d) 369, 106 A.L.R. 249.

The first question for consideration is whether there is substantial evidence in the record to support the Board's finding that the transfer in question was made in contemplation of death within the meaning of the statute. The statute, section 302 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 70, provides that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer * · * * in contemplation of * * * death."

The finding of the Board that the transfer was made "in contemplation of death" is a finding of fact. The phrase, "in contemplation of death," is used to describe the impelling motive of the donor at the time the gift was made. The courts have given the meaning of the phrase, as it is used in the statute, careful consideration. It was analyzed at length by Chief Justice Hughes in 1931 in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 452, 75 L.Ed. 867; and since that time the courts have endeavored to follow the rules there stated. This court has reviewed and applied the doctrines of that decision on several occasions; in an opinion by Judge Stone, in Neal v. Commissioner of Internal Revenue, 53 F.(2d) 806, 807; in an opinion by Judge Booth, in Willcuts v. Stoltze, 73 F.(2d) 868, 871; and in an opinion by Judge Sanborn, in St. Louis Union Trust Co. v. Becker, 76 F.(2d) 851, 862. So far as applicable

here, these decisions establish the following propositions: (1) The test of whether or not the transfer was made in contemplation of death is always to be found in the transferor's motive; (2) "the motive which induces the transfer must be of the sort which leads to testamentary disposition"; (3) in determining the presence or absence of such motive the fact-finding tribunal, where the evidence is circumstantial, should take into consideration such circumstances as (a) the condition of the body and mind of the transferor, (b) his age, (c) his desire to be relieved of responsibility, (d) his desire to discharge any moral obligations, or (e) his purpose to carry out some previously adopted policy with respect to the objects of his bounty. But, it is pointed out by the Supreme Court in the Wells Case, supra, that "It is apparent that there can be no precise delimitation of the transactions embraced within the conception of transfers in 'contemplation of death,' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute."

As to decedent's motive, the Board, having reviewed all the testimony, concluded that "The transfer is a substitute for testamentary disposition." In the findings and opinion of the Board it is shown that the age of Mr. Updike was considered; the fact that he was in good health; that his wife had just died; that his sight was impaired; that by the transactions of May 5, 1926, he had disposed of substantially all of his estate to the natural objects of his bounty; that "By these acts he put his house in order against the time of his demise"; that "No other act was necessary or, so far as the record shows, was ever done by the decedent relating to the disposal of his property." It was also pointed out by the Board that the sons were independently established in business, were all financially well off, and in no wise dependent upon gifts from their father; that the decedent had made prior gifts to the sons, but with the apparent purpose to equalize matters because of certain debts of some of the sons to the father, and not pursuant to any continuing policy of making gifts.

At the hearing before the Board now under review, the petitioner assumed the burden and undertook to show that the impelling motive was consistent with the thought of life and not of death. His counsel contend that the testimony establishes that the motive for the transfer consists of the following elements, all of which negative the finding of the Board:

"(a) To relieve decedent of the cares and worries connected with the management of his estate, which had become a burden due to his impaired vision; to ease his mind and eliminate the annoyance caused by having strangers handle his securities.

"(b) To avoid partiality in his loans to his sons.

"(c) To avoid anxiety over loans to one son, who was in a highly speculative business.

"(d) To carry out a policy previously adopted of making liberal gifts to his sons and grandchildren from time to time.

"(e) To afford decedent greater freedom to travel and in the expenditure of an assured income as long as he lived."

There is testimony in the record tending to support each one of these inferences; but it is not so conclusive that the Board was bound to accept petitioner's theory.

There is no direct evidence to support the first (a) inference. It is based upon the fact that prior to the transfer the decedent's vision was impaired and that he secured the assistance of a clerk in his son's office to aid him in checking his securities and in clipping his coupons. The second (b) inference is based upon the fact that among the securities transferred were notes of his three sons in unequal amounts representing loans made by the father. The transfer had the effect of equalizing the division of his property among his sons. The father at various times showed concern (c) over the fact that one of the sons was engaged in the grain business and dealt on a relatively large scale in grain futures contracts. The transferor, however, did not say that this fact in any way influenced his decision to give the sons all of his property. Had he feared such speculations would

result in disaster financially to the son it is at least as reasonable to infer that the father would have kept his property under his own control so that he could help the son when the day of misfortune arrived as it is to assume that he would give him a full share of the estate while the son was still engaged in speculation.

The fourth (d) conclusion is drawn from the fact that in 1916 Mr. Updike gave his sons stocks of the value of $31,600; in 1917, stocks of the value of $40,500; and in 1922 he gave each of them $50,000 in cash. He also made a number of small gifts to his grandchildren at various times prior to 1926.

The fifth (e) element is supported by testimony to the effect that the transferor was fond of traveling; that he was accustomed for several years to make trips for pleasure, especially to his old home in New Jersey; that he was deprived of this pleasure for some time prior to his wife's death because of the condition of her health; and that after her death and after the transfer of his property, consisting as has been pointed out of securities, he resumed his practice of making a journey somewhere annually.

All these matters considered together are as consistent with the finding of the Board as they are with the claim of the petitioner. They do not, therefore, establish the contention that the Board erred as a matter of law in holding that the transfer was made in contemplation of death.

That the evidence supporting the finding that the transfer was made in contemplation of death is substantial cannot, in our opinion, be doubted. Old age in itself is not a "decisive test," yet it is proper to be considered as giving "premonitions and promptings independent of mortal disease." United States v. Wells, supra; Anneke v. Willcuts (D.C.Minn.) 1 F.Supp. 662, 663. That Mr. Updike by the deed of gift transferred substantially all of his property to his three sons and on the same day executed his will in their favor are facts which in themselves lend support to the finding that contemplation of death was decedent's controlling motive in making the transfer. From any reasonable point of view, these facts, considered in connection with decedent's age, his affectionate family relations, and the fact that the bounty was not essential to the welfare of his sons at that time, indicate a "testamentary disposition." In the case of Igleheart v. Commissioner of Internal Revenue (C.C.A.5) 77 F.(2d) 704, 709, the court say: "A gift is to be regarded as made in contemplation of death where the dominant motive of the donor is to make proper provision for the donee after the death of the donor." Where a gift of all of a large estate, no part of which in all probability will be consumed by the donees in the lifetime of the donor, is made by transfer before death to children and grandchildren who are not in need, the act itself is evidence tending to support the conclusion that the gift was made in contemplation of death. That conclusion here is buttressed by all the other facts considered and enumerated by the Board. The good health of the donor, and the other facts and inferences relied upon by petitioner, may be regarded as opposing considerations, but they do not cancel the substantial character nor the weight to be accorded to the facts supporting the Board's finding. In the Igleheart Case, supra, the decedent, at the age of 74, by the creation of two trusts and the execution of a will on the same day, provided for the conveyance to his wife and children of his whole estate amounting to more than two million dollars. Upon his death the entire estate was assessed for an estate tax under the Revenue Act of 1926. Upon petition to review an order of redetermination of the Board of Tax Appeals, the court observed: "In the circumstances disclosed it reasonably was to be inferred that each of those instruments, being a part of a comprehensive plan embracing the entire estate of the decedent, including the making of a will, was made in contemplation of death * * * and that each of the trust instruments was a substitute for testamentary disposition."

Upon similar facts a like conclusion was reached in Rengstorff v. McLaughlin (D.C.N.D.Cal.) 21 F.(2d) 177.

The second question presented involves the correctness of the amount of the tax. Section 302 (i) of the Revenue Act of 1926 (44 Stat. 70, 26 U.S.C.A. § 411 (i), provides that "there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor

by the decedent." The Commissioner applying this statute determined the fair market value of the transferred assets at the time of death to be $453,871.45; and, on the theory that the annuity was a consideration for the transfer, fixed its value at $69,700.76 and allowed a deduction in that amount. No question is raised as to the value of the transferred assets as so determined. Complaint is directed to the value attributed to the consideration.

The value of the consideration was found by taking the present value of an annuity of $27,000 payable quarterly, to be paid in the future to a person 85 years of age, from a table in article 13 of Treasury Regulations 70 relating to the estate tax under the Revenue Act of 1926, wherein the present value of annuities are tabulated in detail. The petitioner contends in this court that a greater deduction should have been allowed; that the consideration was the sum of the payments actually made and not the value of an annuity at the date of the transfer; and that, even if the present value of an annuity at the time of the transfer should be considered the proper amount, the allowance should be in the sum of at least $125,000. The last contention is based upon evidence to the effect that the cost of an annuity, if purchased from a life insurance company, would be $125,000 instead of $69,700.76.

■■ The Board found "that the cost of the annuity should not be an amount greater than the respondent has determined." The Board further found, upon ample evidence to support such finding, that the annuity of $27,000 amounted approximately to the same as the income derived from the transferred property. This latter finding particularly is conclusive here. "The Court of Appeals is without power, on review of proceedings of the Board of Tax Appeals, to make any findings of fact." Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343; General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Elmhurst Cemetery Co. v. Commissioner, 57 S.Ct. 324, 81 L.Ed. —, decided by the Supreme Court February 1, 1937. As already indicated, the review by this court is limited to the question of whether or not the decision of the Board is either arbitrary or erroneous as a matter of law. A proper determination of this point requires a further consideration of the applicable statutes and regulations.

Article 20 of Regulations 63 under the Revenue Act of 1921 provides in part that, where the "transfer was made in contemplation of death, the *full value* of the transferred property, as of the date of the decedent's death, should be included in the gross estate *irrespective of the amount of income or of the annuity payable to the decedent.*" (Italics supplied.) Article 18 of Regulations 70 under the Revenue Act of 1926, concerning reservation of income or an annuity, provides:

"A transfer, not amounting to a bona fide sale for an adequate and full consideration in money or money's worth, is taxable where the decedent reserved to himself during life the entire income of the property transferred. In such a case the transfer of the principal takes effect in possession and enjoyment at the death of the decedent, and the *value of the entire property* should be included in the gross estate. [Italics supplied]. * * *

"Where in any case the transfer was made in contemplation of death, the value of the transferred property, as of the date of the decedent's death, should be included in the gross estate whether or not the transfer was one intended to take effect in possession or enjoyment at or after death."

■ Similar regulations were in existence under the Revenue Act of 1924. In other words, the Regulations under the act of 1926 were in effect for some years prior thereto. The rule applicable has been recently stated in First Nat. Bank of Greeley, Colo. v. United States (C.C. A.10) 86 F.(2d) 938, 939, as follows: "Congress, with knowledge of this regulation, has repeatedly revised the income taxing statutes; none of the later acts in any way impinged upon this long standing regulation. This is such direct and convincing proof of legislative approval of the regulation that the courts would not be warranted in overturning it unless it is clearly inconsistent with a statute. [Citations.]"

■ These regulations do not allow any deduction where property is transferred in contemplation of death and an annuity in exchange is paid by the transferee to the decedent. It must be borne in mind that "transfers in contemplation

of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." United States v. Wells, 283 U.S. 102, 116, 51 S.Ct. 446, 451, 75 L.Ed. 867. If the decedent Updike in this case had kept the property until death, his estate would have been taxed for the entire $453,871.45. That being the situation, why should the tax be less where he has transferred in contemplation of death and the transferee in substance has agreed to collect the income and pay it back to him in the form of an annuity? The transferees lost nothing in the lifetime of the decedent. The personal property and income taxes are not different than they would have been had the decedent kept the securities. Section 411, 26 U.S.C.A., specifically provides that "the value of the gross estate * * * shall be determined by including the value at the time of his death of all property." But the value of the transferred property at the time of the decedent's death was not diminished by the fact that there had been paid back to him in the form of an annuity an amount substantially equal to the income derived from such property. It is because of this rather common-sense result that the various regulations no doubt have consistently provided that such an annuity should not be deducted from the value of the transferred property at the time of the decedent's death. To regard such an annuity as consideration would lead to absurd consequences. To evade estate taxes, if that were the rule, all the owner of property need do would be to transfer his entire estate in contemplation of death and require the transferee to pay back the income as an annuity. Should the decedent live for several years longer than did Updike, no estate tax might be payable at all—a result directly contrary to the intention of the statute, in that, instead of preventing "the evasion of the estate tax," such evasion would thereby be promoted.

Section 302 (i) of the Revenue Act of 1926 (26 U.S.C.A. § 411 (i), was obviously enacted to prevent double taxation on the same economic interest. If it were shown that the annuity exceeded to any substantial degree the income derived from the transferred property, it might then be proper to consider such excess in order to avoid double taxation. That situation is not present in this case.

Under these circumstances, the decision of the Board of Tax Appeals cannot be disturbed. The Commissioner has not appealed nor taken any step, so far as the record discloses, looking to a revision of the assessment, and the petitioner is not prejudiced thereby.

The order of the Board is affirmed, and the petition for review is dismissed.